IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**CENTAUR PA LAND, LP, <u>et al.</u>,**<br><br>Debtors. | Chapter 11<br><br>Case No. 09-13760 (KJC)<br><br>(Jointly Administered)<br><br>Proposed Objection Deadline: November 18, 2009 at 4:00 p.m.<br>Proposed Hearing Date: November 23, 2009 at 10:30 a.m. |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. §§ 105(a), 362, 363(b), and 364(c) AND FED. R.
BANKR. P. 4001, (I) AUTHORIZING THE DEBTORS TO OBTAIN UNSECURED
POST-PETITION FINANCING FROM CENTAUR, LLC; (II) GRANTING SUCH
INTERCOMPANY FINANCING SUPERPRIORITY ADMINISTRATIVE EXPENSE
STATUS; (III) AUTHORIZING PAYMENT OF CERTAIN PREPETITION EXPENSES;
AND (IV) PROVIDING NOTICE OF AND SCHEDULING A FINAL HEARING**

Centaur PA Land, LP ("Centaur PA") and Valley View Downs, LP ("VVD LP"), debtors and debtors-in-possession in the above-captioned chapter 11 cases (together, the "Debtors"), file this motion (the "Motion") for the entry of an order substantially in the form attached as Exhibit A hereto (the "Interim Order") and a final order (the "Final Order", and together with the Interim Order, the "Orders"), pursuant to sections 105(a), 362, 363(b) and 364(c) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the Debtors to obtain unsecured post-petition financing from the Debtors' indirect parent company, Centaur, LLC; (ii) granting such intercompany financing superpriority administrative expense status; (iii) authorizing payment of certain prepetition expenses and (iv) providing notice of and scheduling

a final hearing with respect to the relief requested herein. In support of the Motion, the Debtors rely upon and refer this Court to the Affidavit of Kurt Wilson in Support of Intercompany Financing and the Affidavit of Kurt Wilson in Support of First Day Motions [Docket No. 4] (the "First Day Affidavit"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Debtors are wholly-owned indirect subsidiaries of Centaur Inc., which, through its subsidiaries (collectively with Centaur Inc., "Centaur") owns, operates, and/or has interests in racing and casino facilities in five distinct gaming markets in Indiana and Colorado. No Centaur entities other than the Debtors have sought relief under chapter 11 of the Bankruptcy Code.

2. The Debtors hold a racing, gaming and entertainment development opportunity in Pennsylvania to be known as "Valley View Downs". The Debtors are in the process of securing the necessary approvals and licenses for the completion of Valley View Downs, which include an application (the "License Application") for a gaming license ("Gaming License") that is currently pending with the Pennsylvania Gaming Control Board of the Commonwealth of Pennsylvania (the "Commonwealth").

3. As the Debtors work to obtain the necessary approvals and licenses and proceed with the development of Valley View Downs, they continue to incur, on a post-petition basis, certain limited, but necessary, operating costs, obligations to vendors, consultants, and regulatory authorities related to their License Application. In addition, due to the Debtors' intervening bankruptcy filings, certain nominal prepetition expenses, including expenses related to the License Application, have accrued and remain unpaid (the "Prepetition Obligations").

4. Prior to filing these cases, funding for the Debtors' costs and expenses was obtained through intercompany loans from the Debtors' indirect parent company, Centaur, LLC

(the "Affiliate Lender"). Centaur is currently negotiating with the lenders under their prepetition credit facilities (the "Prepetition Lenders") in an effort to negotiate a consensual restructuring of their debt and recapitalization of the businesses, which would likely include post-petition financing. While negotiations are not yet complete, substantial progress has been made.

5. Pending an agreement with the Prepetition Lenders regarding a global restructuring, the Debtors request authorization to effectively continue their prepetition funding arrangements with the Affiliate Lender by incurring intercompany financing, as needed, on an unsecured, superpriority basis, to fund the Debtors' postpetition working capital needs, operating costs and expenses, and any outstanding, nominal, Prepetition Obligations that may have accrued prior to the bankruptcy filings (collectively, the "Intercompany Financing"). The Debtors anticipate that they will need to borrow not more than $125,000 in the aggregate (the "Borrowing Cap") over the next thirty days, pursuant to the Intercompany Financing.

6. The Debtors believe that the terms of the Intercompany Financing, as explained herein and set forth in the Interim Order, are fair and reasonable, and that it is unlikely that similar financing could be obtained from a third party on similar or better terms for the limited time period required. Moreover, such funding is necessary to maintain the Debtors' relationships with their vendors, consultants and regulatory authorities. Accordingly, the Debtors submit that the Intercompany Financing is in the best interests of the Debtors' estates and should therefore be approved.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

8. On October 28, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to the Order of this Court [Docket No. 14].

9. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. No official creditors' committee has been appointed yet in the Debtors' cases. Further, no trustee or examiner has been requested or appointed in these cases.

## THE PROPOSED INTERCOMPANY FINANCING

11. Prior to the Petition Date, since the Debtors are non-operational, the Debtors satisfied their working capital requirements through intercompany borrowings from the Affiliate Lender. Such intercompany borrowings are reflected on the Debtors' books as a loan from the Affiliate Lender and are subordinate and subject in right of payment to the obligations of the Prepetition Lenders pursuant to the terms of an intercompany subordinated demand and promissory note dated October 30, 2007 (the "Intercompany Note"). The Affiliate Lender provided sufficient liquidity to fund the Debtors' working capital requirements and operating costs necessary to preserve the future opportunity at Valley View Downs.

12. On a post-petition basis, the Debtors merely wish to continue this practice to avoid the harm to their estates that would occur if (i) their vendors and consultants decided not to continue their relationships with the Debtors because the Debtors were unable to satisfy their obligations to such parties, and (ii) they were unable to make necessary payments to the regulatory authorities related to processing their License Application.

13.     The Debtors have filed this Motion for approval of the Intercompany Financing, subject to the terms of the Intercompany Note, and authorization to grant any obligations of the Debtors thereunder superpriority administrative expense status. In addition, as the Prepetition Lenders have liens on substantially all property and assets of Centaur, the Debtors propose the following procedures with respect to each request for a borrowing under the Intercompany Financing (the "Borrowing Procedures"):

    i. for each request to borrow from the Affiliate Lender (a "Borrowing Request"), the Debtors will simultaneously provide Credit Suisse, Grand Cayman Branch, as administrative agent under the first lien prepetition credit facility (in such capacity, the "Prepetition First Lien Administrative Agent") with a brief summary of the reason for such Borrowing Request and the total amount requested;

    ii. the Prepetition First Lien Administrative Agent will have two (2) Business Days[1] to review and respond to the Borrowing Request;

    iii. if the Prepetition First Lien Administrative Agent does not object to the Borrowing Request by 12:00 p.m. on the second Business Day after such Borrowing Request is submitted for their review, the Prepetition Lenders will be deemed to have consented to the amount and purpose for which the Borrowing Request was made and the Affiliate Lender will be authorized to disburse the funds requested in the Borrowing Request to the Debtors by 12:00 p.m. on the following Business Day;

    iv. if the Prepetition Lenders do not consent to such Borrowing Request, and the Debtors and Prepetition Lenders cannot reach a consensual resolution to such objection, the Debtors will seek authority from the Court to incur such unsecured indebtedness; and

    v. the Court's determination as to whether such Borrowing Request should be allowed will then be binding on the Debtors, Prepetition Lenders and all parties-in-interest in these cases.

**THE PREPETITION OBLIGATIONS**

14.     On October 30, 2009, the Debtors received an invoice from the Commonwealth requesting payment in the amount of $37,480.57, for expenses incurred prior to

---

[1] "Business Day" shall mean any day other than a Saturday, Sunday or day on which commercial banks in New York City are authorized or required by law to close.

the Petition Date, to cover expenses for the Commonwealth's investigations and proceedings related to the License Application (the "PA Invoice"). In addition, the Debtors may determine that there are de minimis Prepetition Obligations that have not been identified in the Motion. The Debtors, however, may only learn of such amounts subsequent to the date hereof. Accordingly, the Debtors request authority to pay any such additional obligations up to the Borrowing Cap in accordance with the Borrowing Procedures set forth herein.

## DISCLOSURES PURSUANT TO BANKRUPTCY RULE 4001(c) AND LOCAL RULE 4001-2

15. The proposed Interim Order contains only the following provision required to be highlighted pursuant to Bankruptcy Rule 4001(c)(1) or Local Rule 4001-2(a)(i): a waiver of the Bankruptcy Code provisions relating to the automatic stay (Interim Order ¶ [5]).

## RELIEF REQUESTED

16. By this Motion, the Debtors respectfully request the entry of interim (pending a final hearing (the "Final Hearing")) and final (after appropriate notice and the Final Hearing) orders pursuant to sections 105(a), 362, 363(b), and 364(c) and (e) of the Bankruptcy Code:

   a) under Bankruptcy Code section 364(c)(1) and (e), (i) authorizing the Debtors to seek and obtain, as the Debtors determine, in their sole discretion, may be necessary, Intercompany Financing from the Affiliate Lender for the Debtors' postpetition working capital and operating expenses, and (ii) granting to the Affiliate Lender a superpriority administrative expense claim with respect to all amounts incurred by the Debtors under the Intercompany Financing, which superpriority administrative expense claim shall be junior only to the superpriority administrative expense claim of Credit Suisse, Grand Cayman Branch ("CS") with respect to the Debtors' obligations pursuant to that certain Amended and Restated Reimbursement Agreement, dated October, 30, 2009, between VVD LP and CS in respect of the letter of credit supporting the License Application;

   b) authorizing and approving the Borrowing Procedures;

c) under Bankruptcy Code sections 105(a) and 363(b), authorizing the Debtors to pay the Prepetition Obligations;

d) under Bankruptcy Code section 362, modifying the automatic stay to the extent necessary to implement the Intercompany Financing and effectuate the terms and provisions thereof and of the Orders; and

e) scheduling the Final Hearing and prescribing the form and manner of service of notice of the Motion.

## BASIS FOR RELIEF

17. Section 364 of the Bankruptcy Code provides bankruptcy courts with the power to authorize post-petition financing for chapter 11 debtors. See In re Vineyard Bay Dev. Co., Inc., 132 F.3d 269, 272 (5th Cir. 1998); see also In re Pro Set, Inc., 193 B.R. 812, 814 (Bankr. N.D. Tex. 1996) (court's prior order authorized debtor to incur post-petition indebtedness under section 364); In re Defender Drug Stores, Inc., 126 B.R. 76, 81 (Bankr. D. Ariz. 1991) ("Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed [section] 364 to provide 'incentives to the creditor to extend post-petition credit.'"). The incentives enumerated in section 364 are not intended to be an exhaustive list of the inducements that a court may grant. Id. In fact, it is not uncommon for a court to approve a lending arrangement containing terms that far exceed those authorized by section 364. Id.

18. Generally, courts apply a three-part test to determine whether credit obtained may be granted under section 364(c) of the Bankruptcy Code. The three-part test includes demonstrating that (1) the debtor cannot obtain credit unencumbered or without super-priority status, (2) the credit transaction is necessary to preserve the assets of the estates, and (3) the terms of the credit agreement are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender. See In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), aff'd, 75 B.R. 553 (E.D. Pa. 1987).

19. Against this statutory backdrop, courts should evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

**The Debtors Need the Intercompany Financing**

20. The Debtors require the Intercompany Financing from the Affiliate Lender to preserve their opportunity to develop Valley View Downs. Until the Debtors receive the necessary approvals from the regulatory authorities, they cannot construct or operate Valley View Downs and thus are left with no source from which to generate revenue. The Debtors are therefore dependent on the Affiliate Lender to provide sufficient liquidity to fund their working capital needs, pending a global restructuring of the corporate enterprise and entry into a postpetition financing facility, which are currently being negotiated by Centaur and the Prepetition Lenders.

21. The Intercompany Financing from the Affiliate Lender is necessary for the Debtors' postpetition operations, and would be provided on an unsecured basis, subject only to superpriority administrative expenses priority. No creditors' interests are being harmed by the Intercompany Financing, and the Debtors propose to draw upon the Intercompany Financing solely for the necessary costs and expenses of preserving valuable future opportunities at Valley View Downs, in accordance with the Orders.

22. Given the temporary nature and relatively small amount of financing that the Debtors anticipate needing, the Debtors do not believe that they could secure financing on any better terms than those proposed in the Intercompany Financing. The Debtors believe that the terms of the Intercompany Financing are fair and reasonable and submit that the

Intercompany Financing is in the best interests of the Debtors' estates and should therefore be approved.

**Payment of the Prepetition Obligations**

23. Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to pay their outstanding Prepetition Obligations. Section 363(b)(l) of the Bankruptcy Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code further provides in pertinent part.

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a). Accordingly, this Court is authorized to grant the relief requested.

24. Courts have recognized the applicability of the "necessity of payment" doctrine with respect to the payment of prepetition obligations that are essential to the continued operation of the debtor's business. See, e.g., In re CoServ, LLC, 273 B.R. 487, 492 n.7 (Bankr. N.D. Tex. 2002) (necessity of payment rule "is a rule of payment not of priority" which allows "trustees to pay prepetition debts . . . in order to obtain continued supplies or services essential to the continued operation of the debtor's business"); In re Just for Feet, Inc., 242 B.R. 821, 824-25 (D. Del. 1999) ("[A] court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor.") (citing In re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor.").

25. The Debtors' inability to pay the PA Invoice may jeopardize the License Application. The License Application is integral to the Debtors' ability to develop Valley View Downs and to successfully reorganize. In light of the potential irreparable harm to the Debtors' estates and their prospects for a successful reorganization, combined with the relatively nominal amounts of the known Prepetition Obligations, the Debtors submit that application of the "necessity of payment" doctrine is wholly warranted in these cases. See In re CoServ, 273 B.R. at 497 (specifically recognizing that the doctrine of necessity may be invoked to pay prepetition claims "to avoid loss of a license" and "to effect a substantial enhancement of the estate").

26. The Debtors submit that the relief sought hereby is in the best interests of the Debtors' estates and accordingly, request that the Court authorize the payment of the Prepetition Obligations.

**Modification of the Automatic Stay is Appropriate**

27. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a petition under section 301 of the Bankruptcy Code. 11 U.S.C. § 362(a). The Interim Order contemplates a modification of the automatic stay (to the extent applicable), to the extent necessary to allow the Affiliate Lender to provide the Intercompany Financing to the Debtors to satisfy postpetition working capital and operating expenses, and satisfaction of prepetition obligations related thereto.

28. Such stay modification provision is, in the Debtors' judgment, reasonable and appropriate under the present circumstances. Accordingly, the Debtors request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

## NOTICE

29. Federal Rule of Bankruptcy Procedure 4001(c) provides that a final hearing on a motion to obtain credit may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

30. Pursuant to Bankruptcy Rule 4001(c), the Debtors request that the Court conduct an expedited hearing (the "Interim Hearing") to enter the Interim Order authorizing the Debtors to obtain the Intercompany Financing, pending the Final Hearing. As set forth above, such interim relief will allow the Debtors to continue to satisfy their working capital needs and pay their operating expenses pending entry of the Final Order or a global restructuring agreement (including a postpetition financing arrangement) between Centaur and the Prepetition Lenders, which will avoid immediate and irreparable harm and prejudice to their Debtors' operations and estates, and thus to all parties in interest in these cases.

31. Notice of the Interim Hearing on this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) Credit Suisse, Grand Cayman Branch as issuer of a letter of credit in favor of the Commonwealth, (iii) the administrative agents under the prepetition credit facilities and their respective counsel; (iv) each of the Debtors' known unsecured creditors as of the Petition Date;[2] (v) the Commonwealth; (vi) the Pennsylvania Harness Racing Commission; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, parties listed in (i) – (vii), the "Interim Notice Parties"). The Debtors submit that under the circumstances no other or further notice is necessary.

---

[2] As of the Petition Date, the Debtors' books and records reflect only one unsecured creditor.

32. The Debtors further request that the Court schedule the Final Hearing and authorize them to mail conformed copies of Interim Order, which fixes the time, date and manner for filing objections, to (i) the Interim Notice Parties, (ii) any party that has filed prior to such date a request for notices with this Court; and (c) counsel for any statutory committee. The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

33. No previous motion or other request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order (i) authorizing the Debtors to obtain the Intercompany Financing; (ii) authorizing and approving the Borrowing Procedures; (iii) granting to the Affiliate Lender an administrative expense claim with respect to all amounts incurred by the Debtors under the Intercompany Financing; (iv) authorizing the Debtors to pay the Prepetition Obligations; (v) modifying the automatic stay to the extent necessary to implement the Intercompany Financing; (vi) scheduling the Final Hearing and prescribing the form and manner of notice with respect thereto; and (vii) granting such other and further relief as is just and proper.

Dated: November 11, 2009
       Wilmington, Delaware

FOX ROTHSCHILD LLP

Jeffrey M. Schlerf (No. 3047)
L. Jason Cornell (No. 3821)
919 North Market Street, Suite 1600
Wilmington Delaware 19801
(302) 654-7444

-and-

Gerard Uzzi (admitted pro hac vice)
Lisa Thompson (admitted pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

PROPOSED ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION