IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| CENTAUR PA LAND, LP, et al.,[1] | : Case No. 09-13760 (KJC) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

**DECLARATION OF STEVEN ZELIN IN SUPPORT OF DEBTORS'
EMERGENCY MOTION FOR (I) ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING THE USE OF PREPETITION SECURED
PARTIES' CASH COLLATERAL, (B) GRANTING ADEQUATE
PROTECTION AND RELATED RELIEF, AND (C) MODIFYING THE
AUTOMATIC STAY; AND (II) INTERIM AND FINAL HEARINGS**

I, Steven Zelin, hereby declare under penalty of perjury that, to the best of my knowledge and belief, the following is true and correct:

1. I am a Senior Managing Director of Blackstone Advisory Partners L.P. (the "Advisor"). The Advisor's affiliate, The Blackstone Group L.P. ("Blackstone"), is a global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange that maintains offices at 345 Park Avenue, New York, New York 10154. I am authorized to execute this declaration on behalf of the Advisor.

2. The Advisor was retained as financial advisor and investment banker to the affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") on or about September 16, 2009. Blackstone is a leading global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange (ticker symbol BX). The Advisor's restructuring and reorganization advisory

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Centaur, LLC (8148); Centaur Colorado, LLC (9131); Centaur Indiana, LLC; Centaur Racing, LLC; Hoosier Park, L.P. (0820); HP Dining & Entertainment, LLC; Centaur Pennsylvania, LLC; VVD Properties General Partner, LLC; Valley View Downs GP, LLC; VVD Properties, LP (6808); Valley View Downs, LP (1028); Centaur PA Land Management, LLC; Centaur PA Land General Partner, LP; and Centaur PA Land, LP.

operation is one of the leading advisors to companies and creditors in restructurings and bankruptcies.

3. The Advisor's professionals have extensive experience working with financially troubled companies in complex financial restructurings. Since 1991, the Advisor has advised on approximately 250 distressed situations, both in and out of bankruptcy proceedings, involving nearly $1 trillion of total liabilities.

4. I am filing this declaration in support of the Debtors' emergency motion (the "Motion") pursuant to sections 361, 362, 363 and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., Rules 2002, 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United State Bankruptcy Court for the District of Delaware, seeking, among other things, (i) entry of an interim order in the form of Exhibit A attached to the Motion (the "Interim Order"), (a) authorizing the Debtors to use cash collateral for the period between the Petition Date through and including the date of a final hearing on the Motion, (b) granting adequate protection to the Debtors' Prepetition Secured Parties[2] and related relief, and (c) modifying the automatic stay; and (ii) scheduling a final hearing to consider entry of a final order authorizing the Debtors' use of the cash collateral and granting adequate protection and related relief on a final basis.

5. This declaration provides an overview of the Debtors' needs for immediate access to cash on hand that may be Cash Collateral.

6. I am fully familiar with the facts set forth herein. In my capacity as Senior Managing Director, among other activities relating to the Debtors' chapter 11 cases, I have

---

[2] Unless otherwise defined, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(a) been engaged in the financial affairs of the Debtors and (b) participated in substantially all aspects of the preparation and commencement of the Debtors' chapter 11 cases. Therefore, unless otherwise stated in this declaration, I have personal knowledge of all of the facts set forth herein.

7. I have reviewed the Declaration of Kurt E. Wilson in Support of First Day Motions (the "First Day Declaration") and, to the extent set forth herein, I have relied on that declaration for purposes of my testimony herein.

## Proposed Use of Cash Collateral

8. The use of Cash Collateral during the Interim Period will be subject to an agreed Budget. I have carefully reviewed the initial Budget, and it provides that the expenditures of cash will be used mainly to preserve and maintain the value of the Debtors' assets for the benefit of the Debtors' estates and creditors, including the Prepetition Secured Parties.

9. I believe that the proposed immediate use of Cash Collateral is necessary to preserve the Debtors' assets and property (including the Prepetition Collateral) and to maintain the operation of their businesses during the chapter 11 cases, and will avoid immediate and irreparable harm to the Debtors' estates and creditors, including the Prepetition Secured Parties. Indeed, use of Cash Collateral for the preservation of assets will maintain the overall value of the ongoing enterprise and may increase the cash-generating ability of the Debtors' assets.

## Need for Emergency Use of Cash Collateral

10. I have been advised that prior to the commencement of these chapter 11 cases, the Debtors relied on proceeds of the First Lien Credit Facility and the Second Lien Credit Facility, and cash generated from day-to-day operations, to fund their operating expenses. Other than cash required to make interest payments under the First Lien Credit Facility, I believe that

3

the Debtors otherwise have and will generate sufficient cash to fund their operations during these chapter 11 cases.

11. The Debtors have approximately $23 million (excluding cash in "restricted cash accounts") of cash on hand as of the Petition Date. I have been advised that substantially all of the Debtors' assets are purportedly encumbered by the Prepetition Secured Parties' liens. Consequently, the Debtors are unable to continue their business operations absent some form of immediate relief from the Court.

12. Currently, the Debtors have no source of funding and little or no available cash or assets readily convertible into cash that are not purportedly subject to the Prepetition Secured Parties' asserted liens and security interests. As such, the Debtors are facing an immediate liquidity crisis that could severely impair the Debtors' ability to maximize the value of their estates for the benefit of all creditors. Given such exigent circumstances, it is essential that the Debtors obtain immediate postpetition authority to use Cash Collateral so that they may continue to operate their businesses during the chapter 11 cases.

13. If the Debtors are unable to obtain approval of the use of Cash Collateral on an interim basis, their ability to consummate a rational restructuring of their liabilities, and to profitably operate their businesses pending consummation, will be jeopardized, reducing potential recoveries to all creditors. The Prepetition Secured Parties would suffer greater harm if the Debtors are not permitted to use Cash Collateral to preserve the going concern value of the Debtors' businesses and are instead forced to sell their assets in a forced liquidation.

14. I believe that the proposed immediate use of Cash Collateral is necessary to preserve their assets and property (including the Prepetition Collateral) and to maintain the operation of their businesses during the chapter 11 cases, and will avoid immediate and irreparable harm to the Debtors' estates and creditors, including the Prepetition Secured Parties.

4

Without access to Cash Collateral, the Debtors could possibly be forced to cease operations, abandon these reorganization efforts and liquidate their estates, to the detriment of all creditors (including the Prepetition Secured Parties).

### Recovery Analysis

15. If the Debtors are unable to use Cash Collateral to operate their businesses, maintain and preserve their assets and finance the administration of their chapter 11 cases, the Debtors would likely be forced to liquidate the estates. In a liquidation, it is my judgment that the value of the Debtors' estates would be significantly lower than if the Debtors were to continue their operations as a going concern. As a result all creditors, including the Prepetition Secured Parties, would suffer greater harm if the Debtors were not permitted to use Cash Collateral to preserve the going concern value of their businesses and are instead forced to sell their assets in a forced liquidation.

16. More specifically, I have reviewed and analyzed the Debtors' capital structure, businesses and assets and, based upon that review and discussions with management, in a liquidation as referenced above, it is my judgment that the value of the business relative to a going concern would be impaired by in excess of $100 million dollars. This reduction in value is based upon a number of factors, including, (i) the shortened time period involved in the sale process and the resulting discount buyers would likely require given a shorter due diligence period; (ii) the loss of customers during the shutdown period that would likely reduce the value buyers would be willing to pay for the assets given the cost a buyer would assume it would incur to restart the business; (iii) the losses to be incurred during the shutdown that would need to be funded; (iv) the costs associated with retaining the Debtors' seasoned management team during the liquidation; and (v) regulatory concerns.

5

17. Hence, the forced liquidation value of the Debtors would be less than their value as a going concern, and recoveries to the Debtors' creditors (including the Prepetition Secured Parties) would be significantly less in the event of a distress liquidation as compared with the continued operation of the businesses as a going concern. Indeed, in a "fire-sale" liquidation of the Debtors' assets, the Prepetition Secured Parties, indeed all creditors — secured and unsecured — would be harmed. Thus, the use of Cash Collateral is necessary to preserve the Debtors' assets and property (including the Collateral) during the Cases, and to avoid immediate and irreparable harm to the Debtors' estates and creditors.

Executed: March 8, 2010

BLACKSTONE ADVISORY PARTNERS L.P.

_____
Steven Zelin
Senior Managing Director